Filed 7/1/22; certified for publication 7/19/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re G.A., a Person Coming Under the Juvenile Court Law. | C094857 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>S.A.,<br><br>        Defendant and Appellant. | (Super. Ct. No. STK-JV-DP-2019-0000302) |

S.A. (mother) appeals from the juvenile court's order terminating parental rights and ordering the minor be placed for adoption. (Welf. & Inst. Code, § 366.26.)[1] She contends the San Joaquin County Human Services Agency (Agency) and the juvenile

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

court failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.), because the Agency did not contact extended family members to inquire about the ICWA and the juvenile court made no findings regarding agency compliance in that regard.

Mother adds that no express ICWA findings were made by the juvenile court during the course of the proceedings, compounding the error, and asks for remand for ICWA compliance. We will affirm the orders with directions to the juvenile court to enter its ICWA finding on remand, as described in this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the issue on appeal is limited to ICWA compliance, we dispense with a detailed recitation of the underlying facts and procedure.

On July 30, 2019, the Agency filed a section 300 petition on behalf of newborn minor G.A., alleging the minor came within the provision of section 300, subdivision (b), failure to protect, and section 300 subdivision (j), abuse of sibling. In the detention report, the social worker reported asking mother and the alleged father if they had any Native American ancestry, which they both denied. Based on those responses, the social worker reported that there was no reason to believe the minor was an Indian child within the meaning of the ICWA.

At the July 31, 2019, detention hearing, the juvenile court appointed counsel and a guardian ad litem (GAL) for mother. Mother informed the court that she did not have any Native American ancestry. The court ordered the minor detained in protective custody and granted supervised visitation for mother. On August 12, 2019, the Agency filed ICWA-20 forms completed and signed by mother and father, indicating no Native American ancestry. At the August 21, 2019, jurisdictional hearing, mother submitted, and the court found the allegations of the petition true. On September 24, 2019, the court found father was the minor's biological father.

2

On February 4, 2020, the Agency filed a disposition report, reporting that there was no reason to believe the minor was an Indian child within the meaning of the ICWA, based on the parents' signed ICWA-20 forms. The report showed that mother declined to participate in the family background interview, and that as a result, the Agency used the information obtained from a February 2016 report in a dependency case involving the minor's half sibling. It was reported that a maternal aunt was unresponsive to phone calls and messages left by the Agency to inquire about placement, as well as a letter sent in September 2019. Mother provided additional information about family members and the Agency made efforts to contact relatives about placement with no success. The Agency recommended bypassing mother for reunification services pursuant to section 361.5, subdivision (b) (10) and (11).

The Agency's September 28, 2020, supplemental disposition report reflected that there was no reason to believe the minor was an Indian child within the meaning of the ICWA based on the ICWA-20 forms completed by mother and father. At the January 14, 2021, continued contested dispositional hearing, the court heard additional testimony and ordered that the parents not be provided with reunification services. The Agency's February 9, 2021, status review report opined there was no reason to believe the minor was an Indian child within the meaning of the ICWA based on the parents' ICWA-20 forms. In the Agency's April 22, 2021 section 366.26 report, it recommended terminating the parents' parental rights and freeing the minor for adoption. The Agency reported no reason to believe the minor was an Indian child within the meaning of ICWA.

On July 28, 2021, the Agency filed a status review report showing that the minor was in the home of the prospective adoptive parents. The report again reflected that ICWA did not apply based on the ICWA-20 forms. At the September 16, 2021, contested section 366.26 hearing, the juvenile court found notice was given and terminated parental rights as to both mother and father, freeing the minor for adoption. The court made no findings related to the ICWA.

3

Mother timely appealed; after record preparation and multiple continuances in the briefing schedule, the case was fully briefed on April 22, 2022, and assigned to this panel thereafter. The matter was submitted on June 21, 2022.

## DISCUSSION

Mother contends the Agency failed to make an adequate inquiry of extended family members to determine if the minor had Indian ancestry, and the juvenile court made no orders or findings in that regard. She adds that the court failed to make findings on the application of the ICWA in this case, compounding the error. We conclude any error was harmless, but remand for entry of ICWA findings.

### I

### *Applicable Law*

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' [Citation.]" (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The juvenile court and the Department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

Section 224.2, subdivision (e) provides that if the court or social worker has *reason to believe* that an Indian child is involved in a proceeding, the court or social worker shall, as soon as practicable, make further inquiry regarding the possible Indian status of the child. As relevant here, further inquiry includes interviewing the parents,

4

Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3.[2] (§ 224.2, subd. (e).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.,* subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.,* subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

II

*Failure to Make ICWA Finding*

As a preliminary matter, mother contends the juvenile court failed to make ICWA findings, including finding the Agency satisfied its obligation to inquire. County counsel agrees, as do we.

---

[2] Section 224.3, subdivision (a)(5) includes the name, birth date and birthplace of the Indian child, if known; the name of the Indian tribe; and the names and other identifying information of the Indian child's biological parents, grandparents, and great-grandparents, if known.

A juvenile court must make findings as to the applicability of ICWA and its failure to do so is error. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.) Findings may be express or implied; when they are implied, the record must "reflect that the court considered the issue and decided whether ICWA applies." (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506.) In *Asia L.*, the appellate court concluded the juvenile court implicitly found the ICWA did not apply when it "expressly found that 'notice had been given pursuant to ICWA' and then proceeded to terminate appellants' parental rights under the usual rather than the heightened ICWA standards." (*Id.* at p. 506.) In *In re A.M.* (2020) 47 Cal.App.5th 303 at pages 313 and 318, the appellate court found the juvenile court implicitly found the ICWA did not apply when it terminated the mother's parental rights and found the child adoptable. But in that case the juvenile court had made previous *express* findings the ICWA did not apply prior to the section 366.26 hearing, and the hearing report noted no new information had been provided.

Here, the juvenile court made *no* findings as to the adequacy of the Agency's inquiry or whether the ICWA applied. While the Agency reported no reason to believe the minor was an Indian child, and there appears no such reason in the record, the court did not inquire of counsel or make any findings. We cannot properly conclude the court considered the issue and decided the Agency's inquiry was adequate and the minor was not an Indian child. The court erred when it failed to make these findings.

III

*Agency Inquiry and Harmless Error*

While conceding the juvenile court failed to make an ICWA finding, the Agency contends any error was harmless because the Agency satisfied its duty of inquiry and there was no reason to believe the minor was an Indian child. Mother cites section 224.2, subdivision (b), which imposes a duty to inquire about Indian ancestry if a child is placed in the temporary custody of a welfare department (§ 306) or probation department (§ 307) and contends "the only prejudice that [she] needs to show is that there were sources of

6

information readily available to respondent that were not consulted." We disagree and see no prejudice here.

An ICWA violation may be held harmless, "when, even if notice had been given, the child would not have been found to be an Indian child, and hence the substantive provisions of the ICWA would not have applied." (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1162.) Here, mother informed the juvenile court that she did not have any Native American ancestry. The Agency then spoke with both parents about the minor's possible Native American ancestry and they denied any such ancestry. At no time did mother or father claim any Indian ancestry. Despite having multiple opportunities to do so over the course of the dependency, the parents never suggested that a family member might know more about their ancestry. When the Agency tried to reach family members, they were not responsive. Meanwhile, the parents consistently stated they had no reason to believe they had Native American ancestry and did not object to the Agency's reports that consistently concluded they did not. No further duty to inquire was triggered in this case, as the court and Agency had no reason to believe that an Indian child was involved. Simply put, no information was *ever* supplied "suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1); *In re Austin J.* (2020) 47 Cal.App.5th 870, 883-884.) "[T]he evidence already uncovered in the initial inquiry was sufficient for a reliable determination." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 743 (*Benjamin M.*).)

Our colleagues in Division Two of the Second District Court of Appeal recently issued an opinion summarizing the disparate rules in cases where the appellant contends a child welfare agency failed in its initial duty to inquire. (*In re Dezi C.* (June 14, 2022, B317935) ___ Cal.App.5th ____ [2022 Cal.App. Lexis 514, at *7-9], as modified, rehg. den. June 28, 2022.) That opinion proposed and adopted a new rule for harmlessness: "[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a

7

reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*Id.* at p. *10.) Similar to the approach taken in *Benjamin M.* and its progeny, the *Dezi C.* court focused on the presence in the record of *any* indication that the minor may be an Indian child, such that the Agency's failings were prejudicial. We agree with our colleagues that, "By limiting a remand for further inquiry to those cases in which the record gives the reviewing court a reason to believe that the remand may undermine the juvenile court's ICWA finding, the 'reason to believe' rule effectuates the rights of the tribes in those instances in which those rights are most likely at risk, which are precisely the cases in which the tribe's potential rights do justify placing the children in a further period of limbo." (*Id.* at p. *15.)

Mother cites *In re Y.W.* (2021) 70 Cal.App.5th 542, but that case is inapposite. The father in that case declared he was or may be a member of a tribe; he wrote "Cherokee from Texas" on his ICWA-020 form, told a social worker his grandmother was " '95% Cherokee,' " and provided vital family information. (*Id.* at p. 548.) The mother disclaimed Indian heritage but said she was adopted at age two and had no information about biological relatives. (*Id.* at p. 548; see also *In re N.G.* (2018) 27 Cal.App.5th 474, 478-481 [duty to inquire where father's ICWA-020 form claimed Indian ancestry and he claimed his cousins were registered tribe members].)

By contrast, here, the Agency had no evidence whatsoever of a tribal link. Mother never claimed Indian ancestry. There is no evidence she was adopted and thus unaware of her biological relatives. This is not a case in which one parent was missing or unavailable to report or deny Indian ancestry, giving rise to a duty to ask relatives about their ancestry. (See *Benjamin M., supra*, 70 Cal.App.5th at pp. 744-745 [father never appeared in the case and could not respond to ICWA inquiry]; *In re Josiah T.* (2021) 71

Cal.App.5th 388, 393, 403, 286 Cal.Rptr.3d 267 [same].) Mother relies on cases in which ancestry is ambiguous; no such ambiguity exists here, as both parents affirmatively stated that they had no Indian ancestry to claim.

Assuming the Agency had a duty to interview extended family under the circumstances presented here, we again agree with our colleagues in the Second District that a parent claiming ICWA deficiencies following termination of parental rights must show prejudice from the agency's failure to conduct such interviews, as explained *ante* in *In re Dezi C.* as well as *In re Darian R.* (2022) 75 Cal.App.5th 502, review denied June 1, 2022. In *In re Darian R.*, as here, both parents denied Indian ancestry and participated in the dependency proceeding; neither parent was adopted; and during the course of the dependency, the parents were "under court order to continue providing information relevant to ICWA." (*Id.* at p. 510.) There was no basis for reversal because "[t]he record simply does not support [the parent's] unvarnished contention that additional interviews of [the parent's] father and sister would have meaningfully elucidated the children's Indian ancestry." (*Ibid.*) Several other appellate courts have held that reversal is warranted only when the record indicates there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; see also *In re A.C.* (2022) 75 Cal.App.5th 1009, 1017 [applying *Benjamin M.* court's standard for prejudice]; *In re S.S.* (2022) 75 Cal.App.5th 575, 581 [same].) We agree with those decisions.

Mother cites to no evidence to support her claim that the juvenile court and the Agency had reason to believe an Indian child is involved such that further inquiry was required, and even on appeal does not proffer any such reason to believe the minor has such heritage. (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 [parent asserting failure to inquire must make an offer of proof or affirmatively claim Indian heritage on appeal].) "The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis. In the absence of such a representation, there can be no prejudice

9

and no miscarriage of justice requiring reversal." (*In re Rebecca R., supra,* 143 Cal.App.4th at p. 1431.)

Mother admits that father's birth in Mexico makes it "unlikely that he can trace his ancestry back to a federally recognized tribe," but speculates that "it is possible" his parents were born in the United States and points out that several tribes "strad[d]le the border." But these speculations are neither evidence nor a proffer. Although mother's briefing twice refers to her denial of Indian heritage as "the drug-addled memories of a person with very limited intellectual capacities," and we recognize that mother was found to be suffering from a "mild/moderate intellectual impairment with persistent depressive disorder," she had a GAL as well as an attorney throughout the proceedings and does not cite the record for support of her characterization of herself on appeal as incapable of determining her heritage, particularly while represented by both an attorney and a GAL.

We conclude the record shows no prejudice flowing from the Agency's failure to interview extended family members. (See *In re Darian R., supra*, 75 Cal.App.5th at p. 510.) Accordingly, the juvenile court's failure to make an ICWA finding on the record was harmless. We will affirm the juvenile court's orders terminating parental rights, but remand with directions to the juvenile court to formally enter its ICWA finding on the record.

## DISPOSITION

The orders terminating parental rights are affirmed.  We remand to the juvenile court for the sole purpose of entering an ICWA finding on the record.


/s/
Duarte, J.

We concur:


/s/
Hull, Acting P. J.


/s/
Renner, J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re G.A., a Person Coming Under the Juvenile Court Law. | C094857 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JV-DP-2019-0000302) |
| Plaintiff and Respondent, | ORDER GRANTING PUBLICATION |
| v. | |
| S.A., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed July 1, 2022, was not certified for publication in the Official Reports.  On the court's own motion and for good cause, it now appears the opinion should be published in the Official Reports, and it is so ordered.


FOR THE COURT:


_____/s/_____
Hull, Acting P. J.


_____/s/_____
Duarte, J.


_____/s/_____
Renner, J.

# EDITORIAL LISTING

APPEAL from the orders terminating parental rights of the Superior Court of San Joaquin County, Jose L. Alva, Judge.  Affirmed with Directions.

Alistair Sheaffer, County Counsel, for Plaintiff and Respondent San Joaquin County Human Services Agency.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant S.A.